73352, 73353. MELTON v. J. M. KENITH COMPANY, INC. et al.; and vice versa.

(355 SE2d 115)

MCMURRAY, Presiding Judge.

On November 1, 1980, J. M. Kenith Company, Inc. and Joseph M. Kenith (plaintiffs) entered into an agreement entitled "Lease Agreement" with Allied Mechanical Services, Inc. (corporate lessee) and Ralph D. Melton (guarantor). Defendant Ralph D. Melton is the president and sole stockholder of corporate lessee and executed the lease agreement as guarantor. The agreement provided for rental of "part of the premises located in the building known as 2578 Old Rockbridge Road, Norcross, Georgia 30071, comprising approximately 9,464 square feet, together with all of the machinery, equipment and fixtures owned by [plaintiffs] . . . as set forth in the annexed Schedule 'A', for a term to commence November 15, 1980 and to end on October 31, 1985, at an annual rental of $48,000.00 per year, payable in monthly installments of $4,000.00 in advance on the first business day of each month. Of the monthly rent of $4,000.00 the sum of $2,500.00 [i]s payment of the rent for the use of the machinery and equipment and shall be made payable to the J. M. Kenith Company, Inc. which owns said equipment. The sum of $1,500 is attributable to rent for the premises and should be made payable to Joseph M. Kenith who is the fee owner of the premises." In addition to rental payments, corporate lessee agreed to pay one-half of the cost of utilities on the leased premises.

After January 1984 neither corporate lessee nor defendant paid any amount for utilities on the leased premises. Further, from June 1984 through the termination date of the lease agreement, neither corporate lessee nor defendant paid monthly rent as prescribed in the lease agreement. Sometime after execution of the lease agreement, corporate lessee filed for bankruptcy. The machinery and equipment described in the lease agreement were seized by the trustee in bankruptcy and sold to satisfy corporate lessee's debts. Consequently, plaintiffs sued defendant Melton as guarantor, seeking damages as a result of corporate lessee's breach of the lease agreement. Defendant answered, denying the material allegations of the complaint, and plaintiffs filed a motion for summary judgment accompanied by supporting evidence.

Defendant did not contradict plaintiffs' evidence regarding breach of the lease agreement, nor did he contradict plaintiffs' evidence regarding the amount of damages arising as a result of corporate lessee's breach of the lease agreement. Further, in his deposition, defendant admitted that he executed the lease agreement as guarantor, testifying that it was his responsibility "[t]o pay the lease if [corporate lessee] couldn't."

From this evidence, the trial court entered summary judgment in favor of plaintiffs, awarding plaintiffs liquidated damages, attorney fees and pre-judgment interest. All costs were taxed to defendant.

Defendant appeals in Case No. 73352 and plaintiffs cross-appeal in Case No. 73353. *Held*:

### Case Number 73352

1. Plaintiffs have filed a motion to dismiss defendant's appeal arguing that defendant failed to file a timely notice of appeal.

On April 22, 1986, the trial court entered an order granting plaintiffs' motion for summary judgment. On May 2, 1986, a judgment was entered setting out the amount of damages to be awarded plaintiffs as a result of defendant's liability as guarantor of the lease agreement. Defendant filed a notice of appeal on May 13, 1986.

Upon plaintiffs' and defendant's request, the trial court entered an order on July 22, 1986, making findings of fact and conclusions of law, clarifying its previous order entered April 22, 1986. (This order did not affect the outcome of the previous orders.) Defendant did not file a notice of appeal from this order and plaintiffs contend that his failure to do so precludes his right to appeal.

Contrary to plaintiffs' contentions the defendant has filed a timely appeal. OCGA § 5-6-38 (a). See *Snyder v. Savannah Union Station Co.*, 85 Ga. App. 851 (1) (70 SE2d 382). Plaintiffs' motion to dismiss defendant's appeal is denied.

2. Defendant contends the lease agreement was not a true lease but was a disguised security agreement regulated by the Uniform Commercial Code (UCC). From this contention, defendant argues that he should be totally relieved from liability on his personal guarantee because plaintiffs impaired the collateral of the lease agreement by failing to perfect their lien on the machinery and equipment by filing a financing statement as required by OCGA § 11-9-302.[1]

(a) At the outset, we find this argument not germane to defendant's liability for rental payments on the leased premises. There is nothing in the lease agreement indicating that the parties intended to enter into a security agreement with regard to the sale of the real property that was the subject of the lease. However, assuming the contrary, a security interest in real property is not subject to the notice requirements of OCGA § 11-9-302. OCGA § 11-9-104 (h). OCGA § 11-9-302 relates only to specific security interests in personal property. See OCGA §§ 11-9-102; 11-9-104. Consequently, since the evidence was undisputed regarding corporate lessee's breach of the lease

---

[1] This Code section requires a creditor to file a financing statement in order to perfect its security interest in collateral.

on the real property and since defendant did not contradict the amount of damages arising from said breach of contract, the trial court did not err in granting plaintiffs' motion for summary judgment for corporate lessee's failure to pay rent on the leased premises and for corporate lessee's failure to pay its portion of the utility costs on the leased premises.

(b) With regard to defendant's contention concerning the machinery and equipment, the first issue we must resolve is whether the lease agreement was a true lease or a security instrument regulated by the UCC.[2]

"When the issue . . . is the determination of whether a document denominated on its face as a lease 'is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or *for a nominal consideration* does make the lease one intended for security.' (Emphasis supplied.) OCGA § 11-1-201 (37)." *Mann Investment Co. v. Columbia Nitrogen Corp.*, 173 Ga. App. 77, 78 (1) (325 SE2d 612). "Any determination of whether consideration is 'nominal' must be made on a case by case basis. . . ." *Mejia v. C & S Bank*, 175 Ga. App. 80, 82 (332 SE2d 170).

In the case sub judice, the lease agreement provided that "the Lessee shall have the option to purchase the machinery and equipment . . . on October 31, 1985, for the sum of $1.00 . . . Upon the receipt of such payment, [plaintiffs] shall deliver to Lessee a duly executed bill of sale of the machinery and equipment with full warranties, whereupon the lease on the machinery and equipment shall terminate. . . ." Further, there is evidence in the record which indicates the machinery and equipment were worth much more than one dollar upon the termination date of the lease. Under these circumstances, we find the consideration "nominal" as a matter of law, thus indicating that the lease agreement was intended to evidence a security transaction. See *Litton Indus. Credit Corp. v. Lunceford*, 175 Ga. App. 445, 446 (2) (333 SE2d 373), for other factors considered when determining whether a lease was intended as a security agreement.

(c) Anticipating that the lease agreement may be construed as a security instrument, plaintiffs cite *Reeves v. Hunnicutt*, 119 Ga. App. 806 (168 SE2d 663), arguing that certain provisions in the lease agreement foreclose defendant's right to claim his discharge based on an

---

[2] OCGA § 11-9-102 (2) provides that leases intended as security are regulated by Article 9 of the UCC.

impairment of collateral. We do not agree.

In *Reeves v. Hunnicutt*, supra, under the terms of a security agreement, the obligor consented in advance to the impairment of collateral thereby extinguishing his right to claim unjustifiable impairment of collateral as a defense to a suit on a promissory note. In the case sub judice, after a thorough examination of the lease agreement, we have found no language which can remotely be construed as a waiver of the defense provided in OCGA § 11-3-606 (1) (b). See *First Bank & Trust Co., Palatine v. Post*, 10 Ill. App. 3d 127, 132 (293 NE2d 907), and *National Acceptance Co. v. Demes*, 446 FSupp. 388, 390-391 (3, 4) (1977).

(d) We now turn to the issue of whether defendant is relieved of liability on his personal guaranty based on plaintiffs' failure to file a financing statement, thereby impairing the collateral of the lease (security agreement) by allowing defendant's interest in the collateral to become subordinate to the trustee in bankruptcy.

OCGA § 11-3-606 (1) (b) provides that "[t]he holder discharges any party to the instrument to the extent that without such party's consent the holder . . . [u]njustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

In the case sub judice, by failing to file a financing statement as is required by OCGA § 11-9-302, plaintiffs "held an unperfected security interest in the collateral which 'is subordinate to the rights of a person who becomes a lien creditor [ . . . before the security interest is perfected. . . . OCGA § 11-9-301 (1) (b).]' A 'lien creditor' is defined by the Code to include a Trustee in Bankruptcy from the date of the filing of the petition. [OCGA § 11-9-301 (3)].

"By not filing the financing statement in accordance with Article 9 of the Code, [plaintiffs'] security interest was subordinate to that of the Trustee in Bankruptcy. This subordinate position produced an unjustifiable impairment of collateral in that [plaintiffs were] prevented from disposing of the collateral and crediting the amount received to the indebtedness owed . . . by [corporate lessee]. [Defendant], as [guarantor] of the corporate indebtedness, would then have only been responsible for any remaining indebtedness, had there been any, instead of the entire unpaid balance [under the equipment lease agreement], as is [plaintiffs'] present theory. [Cits.]" *First Bank & Trust Co., Palatine v. Post*, 10 Ill. App. 3d 127, 132 (6, 7), supra.

Consequently, based on OCGA § 11-3-606 (1) (b), defendant is absolved of liability as guarantor for "rental payments" for the machinery and equipment. The trial court erred in granting summary judgment in favor of plaintiffs for corporate lessee's breach of the equipment lease agreement. Compare *Leslie Fay, Inc. v. Rich*, 478 FSupp. 1109, 1115-1117 (6) (1979). As we held in subsection (a) of

this division, the trial court properly granted summary judgment in favor of plaintiffs with regard to defendant's liability for unpaid rent and utilities. However, since the trial court awarded aggregate damages based on breach of the real property lease and the equipment lease agreement and did not apportion damages with respect to each contract, we remand for a determination as to what portion of damages, and mitigation thereof, is attributable to breach of the real property lease agreement.

3. Plaintiffs' motion for frivolous appeal is denied.

### Case Number 73353

Plaintiffs cross-appeal from the trial court's order denying their motion to strike evidence submitted by defendant in opposition to their motion for summary judgment. Plaintiffs challenge the admissibility of evidence submitted by defendant in opposition to their motion for summary judgment. Pretermitting the validity of plaintiffs' assertions, we find the trial court's failure to strike the evidence complained of to be harmless, as we based our decision in the main appeal upon evidence which was uncontradicted and admissible in opposition to plaintiffs' motion for summary judgment.

*Judgment affirmed in part and reversed in part in Case No. 73352, and case remanded with direction that the trial court conduct a proceeding to determine the amount of damages to be awarded to plaintiffs. Judgment affirmed in Case No. 73353. Plaintiffs' motions to dismiss and for frivolous appeal are denied. Carley and Pope, JJ., concur.*

DECIDED MARCH 17, 1987.

*B. J. Smith*, for appellant.
*Anthony M. Zezima*, for appellees.