## 75504. BANK SOUTH v. JONES.
(364 SE2d 281)

DEEN, Presiding Judge.

Donna Jones, the former wife of appellee Thomas Jones, obtained financing from Bank South in the amount of $48,000 to open a business known as Interiors Etcetera. Thomas and Donna Jones endorsed a promissory note in favor of the bank, and Donna Jones also signed the note on behalf of "Interiors Etcetera, a Proprietorship." Thomas Jones, however, appears to have had no financial interest in the business. A security agreement was drafted and signed by Donna Jones whereby the bank took a security interest in the accounts receivable, contract rights of the debtor, and all the inventory of the business. Financing statements were prepared and filed, but were never signed by Donna Jones. Shortly before the business was scheduled to open, Thomas Jones notified the bank that the couple was having marital difficulties and that there was a danger that his wife and her friends were removing the collateral from the business premises. The bank immediately filed an action against Donna Jones and obtained a temporary restraining order prohibiting her from interfering in any way with the collateral. The TRO was later converted into an interlocutory injunction. The bank had the collateral inventoried and appraised, but it did nothing with the collateral in its possession. Because it failed to perfect its security interest in the collateral, the bank's interest was subordinated to that of the trustee in bankruptcy when Donna Jones subsequently declared bankruptcy. The bank then filed suit against Thomas Jones as co-endorser of the promissory note.

At trial, the bank admitted that it made the loan anticipating that it would be secured by the collateral listed in the security agreement and the financing statement, that the collateral was lost as a result of its negligent failure to perfect its security interest, and that appellee did not enter into any agreement to allow the bank to release the collateral. At the close of the bank's evidence, the trial court granted Thomas Jones' motion for a directed verdict, holding that the bank's admission that it unjustifiably impaired the collateral when it failed to perfect its security interest shifted to the bank the burden of proving the extent of the impairment and raised the presumption

that the value of the impaired collateral equaled the amount of the debt. Bank South appeals. *Held*:

1. OCGA § 11-3-606 provides: "(1) The holder discharges any party to the instrument to the extent that without such parties' consent the holder: . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

"The discharge provisions . . . apply only to signers who occupy the position of sureties, such as accommodation parties." *Farmers State Bank of Oakley v. Cooper*, 608 P2d 929, 933 (1980). The Official Comment to UCC § 3-606 states that this section has been reworked to make it clear that "1. The words 'any party to the instrument' remove any uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including accommodation maker or acceptor known to the holder to be so." To determine if Jones was an accommodation maker we turn to OCGA § 11-3-415 (1), which states: "(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." The relevant portion of the Official UCC Comment to this section provides: "(1) Subsection (1) recognizes that an accommodation party is always a surety (which includes guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs." As a surety under OCGA § 11-3-606 (1) (b), an accommodation maker therefore has the right to release from his obligation to the extent that he can show unjustifiable impairment of the collateral. In the majority of jurisdictions this defense is not available to a maker to "permit relief to a person, who, having a right of subrogation against the maker, could prove his rights were prejudiced by the payee's release of the maker or impairment of the maker's collateral otherwise available to pay the obligation." *In re I. A. Durban*, 41 UCC Rep. Serv. 167, 171 (U. S. Bankruptcy Ct., SD Fla., 1985). Sureties, whether they are accommodation makers or endorsers, are only secondarily liable and retain a right of recourse against the primary debtor. "It is common practice for a surety to appear on a note either as a comaker or an indorser." White & Summers, Uniform Commercial Code, § 13-12 at 516 (1980).

The intention of the parties must be ascertained in determining whether a party is an accommodation maker. Except as to holders in due course, this status may be determined by parol evidence. OCGA § 11-3-415 (3). Two primary factors are usually found to indicate this status: (1) the accommodation party received no benefits from the

proceeds of the instrument, and (2) the signature was needed by the maker to acquire the loan. *Farmers State Bank of Oakley*, supra. Other factors which have been required to be shown in order to determine whether a party can claim this status include "his purpose in signing the instrument, [and] the intent of the parties to the instrument." *Lyons v. Citizens Commercial Bank*, 443 S2d 229, 231 (1983). See also Annot., "Who is Accommodation Party Under Uniform Commercial Code § 3-415." 90 ALR 3d 342 (1979); Annot., "Who is 'Party' Discharged on Negotiable Instrument to Extent of Holder's Unjustifiable Impairment of Collateral Under UCC § 3-606 (1) (b)?" 93 ALR 3d 1283 (1983); White & Summers, Uniform Commercial Code, § 13-3, p. 519 (1980).

On the note in question, the defendant was designated as an "endorser" and signed the instrument below the signature of his wife. Beyond that, and an apparent agreement that he received none of the loan proceeds, there is very little evidence of his accommodation status. In its brief, however, the bank admits that it required Thomas Jones to endorse the note because Donna Jones had little or no business experience, and the bank relied upon her husband's business background, assets, and employment in making the loan. Although the bank argues later in its brief that Jones was primarily liable on the note, its concessions in the brief and its position at trial during arguments on the burden of proof under OCGA § 11-3-606 (b) indicate that the bank considered him to be an accommodation party.

An issue which greatly concerned the trial court in ruling upon the motion for a directed verdict was which party bore the burden of proof as to the extent of the impairment. The court below found that the bank's admission of unjustifiable impairment shifted the burden of proof to it as to the extent of the impairment. The bank presented evidence through an expert witness' testimony that the wholesale value of the collateral was $14,219.50. On cross-examination the appraiser admitted that the bank asked for only the wholesale value, but that the retail value could be as high as $64,000.

An examination of the case law reveals that UCC § 3-606 is an equitable doctrine which was designed to protect the surety's right of subrogation. The test for unjustifiable impairment of collateral not in the creditor's possession is whether the creditor exercised reasonable care considering the circumstances of the case. The burden of proof is on the party claiming the defense, and he must prove it by a preponderance of the evidence. *Bank of Ripley v. Sadler*, 671 SW2d 454 (1984). See Annot., "What Constitutes Unjustifiable Impairment of Collateral, Discharging Parties to Negotiable Instrument, Under UCC 3-606 (1) (b)?" 95 ALR 3d 962 (1979). Failure to execute a security agreement in the collateral constitutes an impairment of collateral. *White v. Household Fin.*, 302 NE2d 828 (1973); *North Bank v. Circle*

*Investment Co.*, 432 NE2d 1004 (1982). See also *Hurt v. Citizens Trust Co.*, 128 Ga. App. 224 (196 SE2d 349) (1973); *First Guaranty Bank v. Szekeres*, 139 Ga. App. 124 (227 SE2d 908) (1976), which hold that under Georgia law "impairs" means injured, allowed to deteriorate in value, or that the creditor was negligent in failing to foreclose prior to the bankruptcy of the debtor. Georgia also recognizes that the burden of proof is on the guarantor or accommodation party to show impairment of the collateral. *Mitchell v. Ringson*, 169 Ga. App. 88 (311 SE2d 516) (1983).

In the instant case, the bank admitted that it negligently failed to perfect the security interest, and the court below found that the defendant was relieved of proving this issue. We concur in that ruling for the reasons set forth above. We must now determine, however, the issue which greatly concerned the trial court: which party bears the burden of proving the extent of the impairment? The court below found that the bank's admission of unjustifiable impairment shifted the burden of proof to it as to the extent of the impairment, and that the bank did not meet its burden of proof. We disagree that the burden of proof was shifted; the defendant had a two-pronged burden of proof: unjustifiable impairment and the extent of the impairment.

OCGA § 11-3-307 provides that "(2) [w]hen signatures are admitted or established, production of the instrument entitles a holder to recover on it *unless the defendant establishes a defense.*" (Emphasis supplied.) Official comments to subsection 2 provide that "[o]nce signatures are proved or admitted, a holder makes out his case by mere production of the instrument, and is entitled to recover in the absence of any future evidence. The defendant has the burden of establishing any and all defenses, not only in the first instance but by a preponderance of the total evidence. The provision applies only to a holder." The defendant therefore bears the burden of proving unjustified impairment and the extent of the impairment. *Farmers State Bank of Oakley v. Cooper*, supra at 936; *Peacock v. Farmers & Merchants Bank*, 454 S2d 730, 733 (1984); *Lyons v. Citizens Commercial Bank*, supra.

The release, however, is only *pro tanto* and the extent is a factual question which must be proven. *Lyons v. Citizens Commercial Bank*, supra at 232. The amount of the impairment is the limit of the right of the parties to be discharged and the burden of proof lies with the party seeking discharge to establish both the failure to protect the security and the damage that accrued as a result of that failure. *Van Balen v. Peoples Bank &c. Co.*, 626 SW2d 205 (1982). If impairment is shown, the discharge of the surety is *pro tanto* only. That is, the release is limited to the extent of the value of the collateral at the time of the impairment. *Bank of Ripley v. Sadler*, supra at 457; *Schauss v. Garner*, 590 P2d 1316 (1979). If the collateral is worthless,

there is no unjust impairment. *Lyons v. Citizens Commercial Bank*, supra at 232. We must note, however, that if the monetary amount of the impairment cannot be ascertained, one court has held that the guarantor will be discharged of all liability on the instrument. *Langeveld v. L.R.Z.H. Corp.*, 376 A2d 931 (1977).

We find the reasoning in *First Bank &c. Co. of Palatine v. Post*, 10 Ill. App. 3d 127 (1973), to be outside the majority view as to the discharge of the surety's liability. It holds that the bank's failure to perfect a security interest in the collateral operates as a complete defense to the instrument. Under Georgia law, a discharge operates only when the holder "unjustifiably impairs any collateral for the instrument," i.e., increases the risk to the party. *Hunter v. Community Loan &c. Corp.*, 127 Ga. App. 142 (193 SE2d 55) (1972). Case law from other jurisdictions which has been cited above persuades us that the discharge is only *pro tanto* and releases the surety only to the extent that he proves the impairment. To the extent that *Melton v. J. M. Kenith Co.*, 182 Ga. App. 184 (355 SE2d 115) (1987), follows the reasoning in *First Bank &c. Co. of Palatine v. Post*, supra, it is overruled.

2. As this case must be retried, it is not necessary to consider appellant's remaining enumeration of error, as any alleged error is unlikely to recur at trial.

*Judgment reversed. Birdsong, C. J., Banke, P. J., Pope and Benham, JJ., concur. Beasley, J., concurs specially. McMurray, P. J., and Carley, J., concur in the judgment only. Sognier, J., disqualified.*

BEASLEY, Judge, concurring specially.

I concur in the judgment only, for I am not persuaded that the burden of proving the extent of the impairment lies with the guarantor or accommodation party. Once that party proves that the holder unjustifiably impaired the collateral, that is, that there is a flaw in plaintiff's claim, the party seeking recovery from the guarantor/accommodation party should be required to prove how much is still owed, if any. The creditor is the plaintiff, and proof of the amount of damages to which it is entitled, is, and should remain, its obligation as one of the elements of its case. It should not be up to the defendant, who proves the impairment, to prove how little he owes as a result of plaintiff's deviation from its obligation to obtain satisfaction from the collateral.

DECIDED NOVEMBER 19, 1987 —
REHEARING DENIED DECEMBER 1, 1987 —

*Mark L. Golder*, for appellant.

*John A. Howard,* for appellee.